*Philip Clarke v. Chinyere Gibson*, No. 1, September Term, 2025. Opinion by Eaves, J.

**APPELLATE PROCEDURE – FAILURE TO PRESERVE ISSUE FOR APPEAL**

The Supreme Court of Maryland held that a respondent in a domestic violence protective order matter did not preserve for appellate review the issue of whether the circuit court erred by not stating on the record whether good cause existed to set a hearing on a final protective order for a date beyond seven days from the date the respondent was served with the temporary protective order.

**PROCEDURAL DUE PROCESS – PROCESS UNDER MD. CODE ANN., FAMILY LAW §§ 4-504–4-506**

The Supreme Court of Maryland held that, generally, service of a temporary protective order on a respondent will satisfy a respondent's right to procedural due process under the United States Constitution and Article 24 of the Maryland Declaration of Rights. Thus, the Court rejected the protective order respondent's argument that procedural due process requires that he also be served with the petition at the time he is served with the temporary protective order because the petition would afford him nothing that was not already provided by the temporary protective order, and he did not challenge that the temporary protective order did not afford adequate procedural due process.

**MD. CODE ANN., FAMILY LAW § 4-506(c)(1)(ii) – SUFFICIENCY OF THE EVIDENCE – CREDIBILITY DETERMINATIONS – EFFECT ON BURDEN OF PROOF**

The Supreme Court of Maryland held that the Appellate Court erred in determining whether there was sufficient evidence before the circuit court to grant a final protective order. The Appellate Court's reliance on the circuit court's negative credibility determination of the protective order respondent's testimony at the final protective order hearing—alone—was not enough to satisfy the protective order petitioner's burden to prove, by a preponderance of the evidence, that the alleged abuse occurred.

IN THE SUPREME COURT

OF MARYLAND

No. 1

September Term, 2025

_____

PHILIP CLARKE

v.

CHINYERE GIBSON

_____

Fader, C.J.,
Watts,
Booth,
Biran,
Gould,
Eaves,
Killough,

JJ.

_____

Opinion by Eaves, J.

_____

Filed: November 24, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

# I
# INTRODUCTION

Chinyere Gibson and Philip Clarke were married but divorced in 2017; they have two minor children together: A.C. and O.C.[1] On February 7, 2024, Ms. Gibson filed against Mr. Clarke in the Circuit Court for Anne Arundel County a petition for protection from child abuse on behalf of A.C. (then 11 years old) and O.C. (then 9 years old). That same day, the circuit court conducted an *ex parte* hearing, determined that there were reasonable grounds to believe that Mr. Clarke committed child abuse, and granted Ms. Gibson a temporary protective order for the children. Because the court found that there were reasonable grounds to believe that child abuse occurred, the court was required to forward the case to Anne Arundel County's Department of Social Services ("DSS") to conduct an investigation and complete a report for the court in time for the final protective order hearing.[2] To give DSS time to conduct its investigation and write its report, the court scheduled the final hearing for February 23.

At the final hearing, Ms. Gibson proceeded unrepresented, and Mr. Clarke appeared represented by counsel. At the conclusion of the hearing, the circuit court granted Ms. Gibson a final protective order, and the Appellate Court of Maryland

---

[1] Prior to initiating the proceedings underlying this case, the parties' custody of the children was governed by an October 2022 order from the Circuit Court for Baltimore City. Pursuant to that order, Mr. Clarke was awarded primary physical custody of the children, and Ms. Gibson was awarded visitation with the children "every other weekend from Friday at 6:00 p.m. until Sunday at 6:00 p.m."

[2] Md. Code Ann., Fam. Law ("FL") (2019 Repl. Vol.) § 4-505(e).

affirmed that decision.[3] We issued a writ of certiorari in this case[4] to answer three questions, which we have rephrased:

1. Did the circuit court err when, without articulating on the record whether good cause existed, it scheduled the hearing for a final protective order more than seven days after Mr. Clarke was served with the temporary protective order?

2. Did the circuit court violate Mr. Clarke's procedural due process when it granted Ms. Gibson a final protective order based on findings of physical abuse of a child where the underlying petition otherwise did not allege acts of physical abuse?

3. In assessing the sufficiency of the evidence, did the Appellate Court err in affirming the circuit court's decision to grant the final protective order solely on the basis that the circuit court did not find credible Mr. Clarke's testimony?

Because Ms. Gibson did not participate in this case after the circuit court granted her a final protective order, we appointed an amicus curiae after granting the writ to defend the judgment of the Appellate Court.[5]

---

[3] *Clarke v. Gibson*, No. 143, 2024 WL 4490368, at *5–8 (Md. App. Ct. Oct. 15, 2024).

[4] *Clarke v. Gibson*, 490 Md. 81 (2025).

[5] Ms. Gibson did not file a brief in the Appellate Court of Maryland. Nor did she respond to this Court's January 2025 letter requesting an answer to Mr. Clarke's petition for a writ of certiorari. Even after this Court issued the writ, Ms. Gibson did not participate in briefing. Thus, this Court asked, and subsequently appointed, Christopher J. Mincher, Esq., and Todd W. Hesel, Esq., to file a brief as amicus curiae to defend the judgment of the Appellate Court. *See* Md. R. 8-511(a)(3). Mr. Mincher and Mr. Hesel have ably discharged that duty for which this Court is grateful.

As to the first question, we hold that Mr. Clarke did not preserve that issue for appellate review, and we decline to exercise our discretion to address it. For the second question, we hold that Mr. Clarke's right to procedural due process was not violated and affirm the Appellate Court's judgment in that regard. Concerning the third question, we hold that, in assessing the sufficiency of the evidence, the Appellate Court erred in affirming the circuit court's decision to grant the final protective order solely on the basis that the circuit court did not find credible Mr. Clarke's testimony. Thus, as to that specific issue, we vacate the Appellate Court's opinion and remand the matter to that court for further action consistent with this opinion.

## II
## BACKGROUND

### A.    *Domestic Violence Protective Orders*

A parent of a minor child may seek on the minor child's behalf an order of protection against the other parent for the alleged abuse of the minor child. Md. Code Ann., Fam. Law ("FL") (2019 Repl. Vol.) §§ 4-501(n)(6), 4-504(a)(1). In the protective order context, abuse means, among other things, "abuse of a child, as defined in Title 5, Subtitle 7 of this article." *Id.* § 4-501(b)(2)(i).[6]

Petitions for protection typically follow a two-step process. If the courts are open for business, then a petition for protection begins with the filing of the petition in either

---

[6] That provision defines abuse of a child as, among other actions, physical or mental injury of a child by, among other people, a parent. FL § 5-701(b)(1).

the District Court of Maryland or a circuit court. *Id.* §§ 4-501(f), 4-504(a)(1).[7] If, after a hearing on the petition, a court finds reasonable grounds to believe that abuse has occurred, then the court may enter a temporary protective order. *Id.* § 4-505(a)(1). A temporary protective order lasts no more than seven days after "service of the order[]" on the respondent, but a court may extend a temporary protective order, not to exceed six months, to ensure that the respondent has been served or if good cause otherwise exists for an extension. *Id.* § 4-505(c). The possible forms of relief that a court can award via a temporary protective order are specified by statute, *id.* § 4-505(a)(2), but, in most instances, at a minimum, a court may order a respondent not to abuse or threaten to abuse the person eligible for relief and to surrender to law enforcement any firearms in the respondent's possession. In the case of alleged child abuse, a court can alter preexisting custody arrangements/orders. *Id.* § 4-505(a)(2)(vii). In cases where there are reasonable grounds to believe that child abuse has occurred, "the court shall forward to the local department[8] a copy of the petition and temporary protective order." *Id.* § 4-505(e)(1).

---

[7] If "neither the office of the clerk of the circuit court nor the Office of the District Court Clerk is open for business[,]" then a person eligible for relief may file a petition with a District Court commissioner and seek an interim protective order. FL § 4-504.1(a). An interim protective order expires on the earlier of (1) the date the temporary protective order hearing is scheduled or (2) "the end of the second business day the Office of the Clerk of the District Court is open following the issuance of an interim protective order." *Id.* § 4-504.1(h)(1)(i)–(ii); *see id.* § 4-504.1(e)(1)(ii) (noting that, unless an interim protective order is extended for good cause, a temporary protective order hearing "shall be held on the first or second day on which a District Court judge is sitting after issuance of the interim protective order[]").

[8] The Family Law Article defines "Local department" to mean "a local department of social services[.]" FL § 1-101(h). In the domestic violence subtitle, "Local department" means "the local department that has jurisdiction in the county: (1) where

4

The local department is then required to prepare a report for the court by the date of the final protective order hearing. *Id.* § 4-505(e)(2).

If a court issues a temporary protective order, then law enforcement is required to "immediately serve the temporary protective order on the alleged abuser under this section[.]" *Id.* § 4-505(b)(1)(i). The temporary protective order itself is required to apprise the respondent of the date and time of the final hearing, *id.* § 4-506(b)(1)(i), all possible forms of relief that can be entered against a respondent if a final order is entered, the possible length of time for which a final protective order can be entered, and that, if the respondent fails to appear at the final hearing, service on the respondent can occur at the respondent's last known address, *id.* § 4-506(b)(2)(i)–(iii).

At the final protective order hearing, a respondent has the right to be heard on whether a court should issue a final protective order. *Id.* § 4-506(a). "[I]f the judge finds by a preponderance of the evidence that the alleged abuse has occurred, or if the respondent consents to the entry of a protective order, the judge may grant a final protective order to protect any person eligible for relief from abuse." *Id.* § 4-506(c)(1)(ii). The relief that a court can award in a final protective order largely mirrors the relief that can be awarded via a temporary protective order. *Compare id.* § 4-505(a)(2) (detailing relief under a temporary protective order), *with id.* § 4-506(d) (detailing relief under a final protective order).

---

the home is located; or (2) if different, where the abuse is alleged to have taken place."
*Id.* § 4-501(*l*).

*B.*     *Procedural History*

**1. The Circuit Court for Anne Arundel County**

**i. Ms. Gibson's petition for protection**

In her February 7, 2024, petition, Ms. Gibson indicated that she was Mr. Clarke's former spouse and that she wanted relief for A.C. and O.C. On the petition, Ms. Gibson checked only the boxes labeled "threats of violence" and "mental injury of a child[.]"[9] The petition did not indicate that Mr. Clarke physically abused A.C. and O.C., and Ms. Gibson did not provide details to support her allegations of threats of violence and mental injury.[10]

**ii. The temporary protective order**

That same day, the circuit court held an *ex parte* hearing on Ms. Gibson's petition. Ms. Gibson testified that, on February 1, A.C. informed her that A.C. was scared of Mr. Clarke and did not feel safe around him. Specifically, Ms. Gibson testified that A.C. informed her that Mr. Clarke cursed at the children, "threatened to throw [O.C.] through the wall[,]" and "actually punched [O.C.] in the chest[.]" Ms. Gibson also informed the

---

[9] Maryland provides petitioners with a standardized form (CC-DC-DV-001) for filing petitions titled, "Petition for Protection from[,]" with the petitioner then checking the relevant box: domestic violence, child abuse, or vulnerable adult abuse. *See Coburn v. Coburn*, 342 Md. 244, 254 (1996) ("[Because] relief under [FL § 4-504] is designed to be available for *pro se* applicants, standard petition forms are provided and kept readily available by the courts."). The form also is available electronically on the Maryland Judiciary's website. *See* https://perma.cc/6KW7-LM2W.

[10] Although the CC-DC-DV-001 form asks a petitioner to provide the details of the alleged abuse and indicates, on the top of the form, that a petitioner can ask a clerk for additional paper, the record does not indicate that Ms. Gibson provided any details as to her allegations of child abuse.

court that, on January 31, Mr. Clarke "threatened to punch [A.C.], but instead of punching her[,] he punched her headboard[,]" "past her ear where her head was[,]" "punch[ing] a hole in her wall in her room."

Based on the January 31 and February 1 incidents, the circuit court found reasonable grounds to believe that Mr. Clarke abused A.C. and O.C, granting Ms. Gibson a temporary protective order for the children. The temporary protective order stated the following:

> There are reasonable grounds to believe that the respondent committed the following act(s) of abuse: Statutory abuse of a child (physical, mental), **forward to DSS for investigation**
> On 01/31/2024
> Description of harm: RESPONDENT PUNCHED [O.C.] IN THE CHEST AND THREATENED TO THROW HER INTO A WALL. ON FEB 1, 2024 RESPONDENT THREATENED TO PUNCH [A.C.] AND PUNCHED HER HEADBOARD AND PUNCHED A HOLE IN THE WALL[.]

The court noted that the case would be referred to DSS for an investigation. The circuit court stated that it was setting the final protective order hearing for February 23, which was "two weeks [out] rather than one because [Child Protective Services] will be involved . . . and [it]'ll have to [prepare] a report." The temporary protective order indicated that the final protective order hearing would take place at the Circuit Court for Anne Arundel County on February 23 at 1:30 p.m. It also informed Mr. Clarke of all possible forms of relief that could be awarded against him and the possible length of a final protective order, should the court award Ms. Gibson a final protective order.

### iii. The DSS report[11]

DSS separately interviewed both A.C. and O.C. on February 8 and 12. DSS completed and sent its report to the court on February 23—the same day as the final protective order hearing. The report indicated that O.C. stated that she believed Mr. Clarke to be "mentally abusive towards her[self] and [A.C.]" and that, the previous week, Mr. Clarke threatened to "throw [O.C.] into a wall and punch her in the throat[.]"

According to the report, A.C. corroborated O.C.'s allegation that Mr. Clarke threatened to both throw O.C. into a wall and punch her. A.C. also relayed that, on Thanksgiving Day 2023, Mr. Clarke punched O.C. in the chest because he believed that she was not listening to him. As to herself, A.C. informed DSS that, on January 31, Mr. Clarke "tried to punch her . . . with his fist but missed and hit her headboard." Although A.C. admitted that Mr. Clarke had never hit her before, she was "afraid to return home because she is afraid of what he will do and thinks he might hit her[.]"

At the end of its report, DSS recommended that Mr. Clarke "complete a mental health assessment and complete [any subsequent] recommendations." DSS further recommended that Mr. Clarke "address anger issues while learning ways to cope with situations in an effort to prevent the children from being placed at risk of harm." DSS deferred to the court as to a ruling on the final protective order.

### iv. The final protective order

The final protective order hearing proceeded as scheduled on February 23 with

---

[11] While the report relays more information than what we recite here, we address only the portions of those interviews pertinent to the issues before this Court.

Ms. Gibson representing herself and Mr. Clarke represented by counsel. Before the hearing commenced, the circuit court provided the parties an opportunity to review the DSS report. Neither side asked for a continuance of the matter based on an inability to fully review the report or because proceeding would prejudice the presentation of either party's case. For her case, Ms. Gibson called as witnesses the author of the DSS report, Ms. Gibson's sister, and herself. Admitted into evidence during Ms. Gibson's case-in-chief were text messages between herself and Mr. Clarke and herself and A.C. The DSS report was not offered or admitted into evidence.

At the end of Ms. Gibson's case, Mr. Clarke moved for judgment on the sufficiency of the evidence,[12] but the circuit court denied that motion. Mr. Clarke proceeded to put on his own case, which consisted of calling himself and his then-fiancée as witnesses.

After the close of the evidence, the circuit court made the following oral ruling from the bench:

---

[12] Although Mr. Clarke's counsel stated that she was "mov[ing] to dismiss the protective order[,]" she argued that Ms. Gibson "ha[d not] shown by a preponderance of evidence that the allegations made within the complaint have been met[]" and that there was no "sufficient evidence submitted to the [c]ourt in order to grant [Ms. Gibson] this protective order on behalf of the children." Thus, this request is properly characterized as a motion for judgment, not a motion to dismiss. *See* Md. R. 2-519(a) ("A party may move for judgment on any or all of the issues in any action at the close of the evidence offered by an opposing party, and in a jury trial at the close of all the evidence. The moving party shall state with particularity all reasons why the motion should be granted."); *see also Webb v. Giant of Md., LLC*, 477 Md. 121, 136 (2021) ("[W]hen a defendant moves for judgment based on . . . the legal insufficiency of the plaintiff's evidence, the trial judge must determine if there is any evidence, no matter how slight, that is legally sufficient to generate a jury question[.]" (alterations in original) (quoting *Thomas v. Panco Mgmt. of Md., LLC*, 423 Md. 387, 394 (2011))). At oral argument in this Court, Mr. Clarke's counsel agreed that the motion to dismiss was, in fact, a motion for judgment.

9

All right, so I've had an opportunity to consider the evidence and also, which was highly significant for my determination, the credibility of witnesses.

\* \* \*

[T]he Court, after consideration of all of the evidence, the credibility of witnesses, finds that there is preponderance of the evidence to believe that the respondent committed the following acts of abuse. Assault in any degree and statutory abuse of a child physical, specifically punching O.C. in the chest.

The evidence was -- persuaded this Court. I know that there was testimony to the contrary as far as the respondent stating that -- denying that he hurt her in any way, *but I just did not find his testimony credible at all*. Particularly given when his fiancé[e]'s testimony seemed to contradict his testimony and his attempt to minimize the physical touching. So, I did not find his testimony to be credible at all.

Therefore, the Court is going to order the protective order[.[13]]

(Emphasis added).

Mr. Clarke's counsel and the court then engaged in the following colloquy:

[MR. CLARKE'S COUNSEL]: I just want to note for the record, just in case it goes anywhere else, that the protective order, the only issues that were put forth were threats of violence and mental injury. There was never any mention of any physical abuse within this protective order. And to have the hearing and the crux of it be on physical abuse, that was not given my client proper notice.

\* \* \*

And so that is essentially a violation of his procedural due process right which is, again, why I made the objection through the course is that that is not something that can be heard because he was not notified of that. He has an opportunity to be -- to prepare in advance for what the allegations will be. The allegations that he was only aware of were threats of violence and mental injury.

---

[13] The circuit court's oral ruling addressed O.C. only and did not make any findings of abuse against A.C.

10

* * *

And from my hearing of the Court's ruling, the ruling was based upon the belief that there was a punch to the chest to O.C.[] And then it's not even clear when that allegedly occurred, but again he had a right to know. There are boxes here for that [on the petition] and nothing [about physical abuse] was checked off.

THE COURT: Thank you for reminding me of that because I failed to address that concern in my ruling as far as his notice which he would have received when he was served with a temporary protective order where the findings of the Court indicated that the respondent punched O.C. in the chest and threatened to throw her into a wall. Respondent threatened to punch A.C. and punched her headboard and punched a hole in the wall. So, if you're concerned about notice, that information was provided to him when he was served with a temporary protective order.[14]

The circuit court's final protective order stated, among other things, that, until February 23, 2025, Mr. Clarke was not to "abuse, threaten to abuse, and/or harass" A.C. and O.C. Custody of the children was awarded to Ms. Gibson for the duration of the protective order with Mr. Clarke receiving visitation every Saturday from 9:00 a.m. to 5:00 p.m., supervised by his mother and stepfather. Mr. Clarke further was ordered to attend anger management classes and surrender any firearms.

Mr. Clarke timely noted an appeal to the Appellate Court of Maryland.

## 2. The Appellate Court of Maryland

In an unreported opinion, the Appellate Court of Maryland affirmed the circuit court's determination to grant a final protective order. *Clarke v. Gibson*, No. 143, 2024

---

[14] The record does not reflect when exactly Mr. Clarke was served. Given that Mr. Clarke appeared at the final protective order hearing with counsel, and the absence of any argument to the contrary, we assume that Mr. Clarke was timely served with the circuit court's temporary protective order.

11

WL 4490368, at *1 (Md. App. Ct. Oct. 15, 2024). Regarding the scheduling issue, the Appellate Court recognized that the law does not require a court, adjudicating a petition for a temporary protective order, to "specify with particularity its reasoning for extending a temporary protective order." *Id.* at *5. Nevertheless, in the Appellate Court's view, the circuit court "indicated that it was extending the order approximately one additional week because DSS needed time to complete an investigation and report" and that "allowing DSS time to complete its investigation into an allegation of child abuse is more than sufficient for extending a temporary protective order to ensure children's safety." *Id.* Thus, the Appellate Court held that the circuit court did not err when it gave the final temporary protective order a duration of 16 days. *Id.*

As to the second issue, the court rejected Mr. Clarke's position that the circuit court violated his right to procedural due process when it considered allegations of physical child abuse, even though Ms. Gibson did not allege acts of physical abuse in her petition. *Id.* at *6. In the Appellate Court's view, the purpose of conducting a hearing before granting a temporary protective order is to "provide petitioners with the opportunity to elaborate on the allegations outlined in their petitions[.]" *Id.* To adopt Mr. Clarke's position would, in the court's eyes, "render a hearing on a petition for protection meaningless." *Id.* The Appellate Court observed that the circuit court expressly noted that Mr. Clarke received a copy of the temporary protective order, which outlined the acts of physical abuse as to which the circuit court concluded there were reasonable grounds to have occurred. *Id.* The Appellate Court concluded that "when Mr. Clarke was served with the temporary protective order, he was given notice of the allegations against him[.]" *Id.*

12

Thus, the Appellate Court held that there was no violation of Mr. Clarke's right to procedural due process. *Id.*

Regarding the final question presented, the Appellate Court held that there was sufficient evidence for the circuit court to grant Ms. Gibson a final protective order. Noting that the circuit court neither admitted hearsay testimony by Ms. Gibson nor relied on hearsay evidence in making its final determination,[15] the Appellate Court held that there was sufficient evidence on which the circuit court could rely in granting a final protective order. *Id.* at \*8. Of the circuit court's determination to grant the final protective order, the Appellate Court stated:

> *The [circuit] court based its finding of physical abuse of O.C. on Mr. Clarke's own testimony which was contradicted by [his fiancée's] testimony. The court explicitly stated that its finding was predicated on the fact that it did not find Mr. Clarke to be credible.* As noted, we defer to the trial court's credibility determinations because the court has had the opportunity to observe and assess witness behavior during proceedings. It is not our role, as an appellate court, to second-guess the trial judge's assessment of a witness's credibility. Notably, the trial court did not find Mr. Clarke's explanation of events to be credible, and discounted his testimony that he never punched, threatened violence against, or mentally abused A.C. or O.C. *As a result, based on the trial court's credibility determinations, there is sufficient evidence in the record to support the trial court's finding, by a preponderance of the evidence, that Mr. Clarke had committed physical abuse against A.C. or O.C.*

*Id.* (emphases added) (citation modified). Thus, the Appellate Court affirmed the circuit court's determination regarding the sufficiency of the evidence to grant Ms. Gibson a

---

[15] In the Appellate Court, Mr. Clarke raised an additional issue: that the circuit court "erred because it improperly admitted hearsay testimony by Ms. Gibson, and ultimately relied on that testimony in determining that Mr. Clarke had abused O.C." *Clarke*, 2024 WL 4490368, at \*7. As indicated, the Appellate Court found no merit in that allegation of error. *Id.* Mr. Clarke did not seek certiorari review of that question in this Court. Thus, we do not further discuss that specific holding of the Appellate Court.

13

final protective order.

### III
### STANDARD OF REVIEW

An individual's right to procedural due process is secured by both the Fifth and Fourteenth Amendments to the United States Constitution, as well as Article 24 of the Maryland Declaration of Rights. *Zukowski v. Anne Arundel County*, 490 Md. 243, 274 (2025). Determinations as to whether an individual's right to procedural due process was violated are made without deference to a lower court's determination. *In re Special Investigation Misc. 1064*, 478 Md. 528, 545–46 (2021) ("[A] trial court's interpretation of the United States Constitution and the Maryland Declaration of Rights is a question of law independently reviewed under a *de novo* standard."). In determining whether the record contained sufficient evidence to sustain a circuit court's determination to grant a final protective order, a reviewing court "make[s its] own independent appraisal by reviewing the law and applying it to the facts of the case." *Piper v. Layman*, 125 Md. App. 745, 754 (1999). We are mindful, however, that we "accept the circuit court's findings of facts, unless they are clearly erroneous." *C.M. v. J.M.*, 258 Md. App. 40, 58 (2023) (citing Md. R. 8-131(c)).

### IV
### ANALYSIS

We hold that Mr. Clarke failed to preserve for appellate review the issue of whether the circuit court erred in scheduling the final protective order hearing more than seven days beyond the date by which he was served with the temporary protective order. As to Mr. Clarke's procedural due process argument, we hold that, in weighing Mr.

Clarke's interests at stake, the relevant process currently afforded to Mr. Clarke under the domestic violence protective order statutes, the additional process he seeks, and the State's interest in protecting victims of domestic abuse, the process afforded to him respected his right to procedural due process. Because the Appellate Court, in assessing the sufficiency of the evidence, affirmed the circuit court's decision to grant the final protective order solely on the basis that the circuit court did not find credible Mr. Clarke's testimony, we vacate the Appellate Court's opinion—with respect to that issue only—and remand the matter for further action consistent with this opinion.

### A. Mr. Clarke Did Not Preserve for Appellate Review the Issue of Whether the Circuit Court Erred in Scheduling the Final Protective Order Hearing More Than Seven Days After Service of the Temporary Protective Order

Mr. Clarke advances various arguments as to why the circuit court erred in scheduling the final protective order hearing more than seven days from service of the temporary protective order without stating on the record whether good cause existed to do so. We agree with the amicus' primary contention that Mr. Clarke has not preserved this issue for appellate review.

Maryland Rule 8-131(a) states, in pertinent part:

> The issues of jurisdiction of the trial court over the subject matter . . . may be raised in and decided by an appellate court whether or not raised in and decided by the trial court. Ordinarily, an appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but th[is] Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal.

Rule 8-131(a) embraces the notion that "considerations of both fairness and judicial efficiency ordinarily require that all challenges that a party desires to make to a trial

15

court's ruling, action, or conduct be presented in the first instance to the trial court[.]" *Hartman v. State*, 452 Md. 279, 299 (2017) (quoting *Chaney v. State*, 397 Md. 460, 468 (2007)). Review in this Court of an issue not raised in or decided by the trial court is "discretionary, not mandatory." *Id.*

The record demonstrates that Mr. Clarke failed to bring this issue to the circuit court's attention. To the extent that time permitted, Mr. Clarke could have filed a motion to dismiss the petition prior to the final protective order hearing. At the very least, he could have objected to the proceedings, raising this argument on the day of the final protective order hearing and bringing the matter to the circuit court's attention. Mr. Clarke took neither course of action. Even after the amicus filed a brief in this Court, bringing the issue of waiver to this Court's attention, Mr. Clarke declined to exercise his right to file a reply brief and to present argument to the contrary. *See* Md. R. 8-502(a) (detailing a petitioner's/appellant's right, and time in which, to file a reply brief).

We also consider the possibility that Mr. Clarke strategically chose not to raise this issue at the circuit court, affording himself an avenue to procedurally unwind that on which he did not substantively prevail. *See Woodlin v. State*, 484 Md. 253, 294 n.26 (2023) ("Although we are satisfied that basic waiver principles resolve this issue, we cannot ignore the possibility that [the defendant's] failure to make any such argument in the circuit court could have been a strategic trial decision."). Such trial tactics or potential gamesmanship considerations are factors we consider when determining whether to exercise our discretion under Rule 8-131(a). *See Peterson v. State*, 444 Md. 105, 125–26 (2015).

The record demonstrates that this issue was not preserved for appellate review, when it otherwise easily could have been. Mr. Clarke has not argued any reason why we should exercise our discretion and address this issue under Rule 8-131(a).[16] Thus, we decline to exercise that discretion. *See Hartman*, 452 Md. at 299; Md. R. 8-131(a).

## B. *The Circuit Court Did Not Violate Mr. Clarke's Right to Procedural Due Process*

Mr. Clarke sought this Court's certiorari review "to address the *notice standards* for respondents when a [p]etition for [p]rotection is filed[.]" (Emphasis added). Mr. Clarke alleges that the circuit court violated his right to procedural due process when it issued a temporary protective order on the partial basis of physical child abuse even though Ms. Gibson did not allege acts of physical abuse in her petition. At oral argument, he further contended that he should have been served with Ms. Gibson's petition at the

---

[16] At oral argument, Mr. Clarke, relying on *State Commission on Human Relations v. Freedom Express/Domegold, Inc.*, 375 Md. 2 (2003), argued that no preservation issue existed because a circuit court's ability to schedule a final protective order hearing beyond seven days from the date of service of the temporary protective order implicates the court's subject matter jurisdiction. Mr. Clarke is incorrect. As we noted in *Freedom Express*, there is a distinction between a court exceeding its subject matter jurisdiction by rendering a judgment on an issue it never had authority to adjudicate, producing a void judgment, and a court improperly exercising its lawful subject matter jurisdiction, producing a judgment that is voidable, i.e., subject to reversal on appeal. 375 Md. at 17–18; *see also Md. Bd. of Nursing v. Nechay*, 347 Md. 396, 406 (1997). Mr. Clarke acknowledges that circuit courts have the authority to decide petitions for protection and schedule final protective order hearings beyond the typically contemplated seven days. A circuit court's decision to take that course of action and subsequently grant a final protective order, without following the statutorily mandated procedures for doing so, might create a voidable judgment, which Mr. Clarke could challenge on appeal. But it does not otherwise divest the circuit court of subject matter jurisdiction of the entire proceeding. Thus, contrary to Mr. Clarke's assertion, this issue is not one of subject matter jurisdiction, which would permit him to raise it any time on appeal without regard to preservation.

17

time he was served with the temporary protective order. In essence, Mr. Clarke believes that he was, in the words of his trial counsel, "not notified" of that against which he would need to defend himself; in other words, he could not "prepare in advance for what the allegations [would] be."

The amicus makes three arguments in response: (1) Mr. Clarke received actual notice of both the temporary protective order and the DSS report, so even if a violation of due process occurred, it was cured; (2) the requirements in FL § 4-504(b)(1)(ii) do not affect a final protective order's legality; and (3) a petition is not at issue in a final protective order hearing.

We hold that, where, as here, the temporary protective order itself provides adequate notice of the reasonable grounds the court finds to believe abuse has occurred, service of such a temporary protective order on a respondent satisfies the respondent's procedural due process right to notice. In this case, Mr. Clarke adequately was notified of the time and place of the final protective order hearing, the pertinent allegations against him, the potential relief that could be awarded against him, the possible length of a final protective order, and was heard on the issue of whether the court should issue a final protective order. Thus, in this case, the circuit court did not violate Mr. Clarke's right to procedural due process.

As we recently noted, "Article 24 of the [Maryland] Declaration of Rights and the Fifth and Fourteenth Amendments of the United States Constitution assure Maryland

citizens of their right to both procedural due process and substantive due process."[17] *Zukowski*, 490 Md. at 274 (alteration in original) (quoting *Johnson v. Md. Dep't of Health*, 470 Md. 648, 686 (2020)). At its core, procedural due process "ensures that individuals are not subject to arbitrary governmental deprivation of their liberty and property interests by requiring that litigants 'receive notice[] and an opportunity to be heard.'" *Id.* (alteration in original) (quoting *Johnson*, 470 Md. at 686).[18] This Court has declined to adopt a bright-line rule for determining when procedural due process has been violated, preferring a more "flexible" approach to assess what each "particular situation demands." *Johnson*, 470 Md. at 686 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)).

Historically, we have weighed three factors in determining whether a particular process comports with an individual's constitutionally protected right to procedural due process:

> (1) the private interest that is affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used, and the probable value, if any, of additional or different procedural safeguards; and (3) the State's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement(s) would entail.

---

[17] Like the petitioners in *Zukowski*, Mr. Clarke does not specify the vehicle under which his procedural due process challenge is brought, so our analysis applies to both the United States Constitution and the Maryland Declaration of Rights. *See* 490 Md. at 274 n.29.

[18] Mr. Clarke predicates his challenge only on the notice prong of procedural due process. Thus, we do not further discuss the aspect of procedural due process that protects one's right to be heard.

*Id.* at 687; *see Mercer v. Thomas B. Finan Ctr.*, 476 Md. 652, 702–07 (2021) (applying the three factors); *Rhoads v. Sommer*, 401 Md. 131, 159–64 (2007) (same); *Motor Vehicle Admin. v. Lytle*, 374 Md. 37, 70–72 (2003) (same). We now turn to a discussion of those factors and how to balance them.

### 1. Factor 1: the private interests affected

The final protective order in this case interfered with, among other things, Mr. Clarke's ability to carry and possess a firearm, as well as his ability to direct the care and upbringing of his children by limiting the time and nature of contact with them. Both of those activities are fundamental rights protected under the United States Constitution. *See N.Y. State Rifle & Pistol Assoc., Inc. v. Bruen*, 597 U.S. 1, 8–10 (2022) (recognizing that, under the Second Amendment, "ordinary, law-abiding citizens have a . . . right to carry handguns publicly for their self-defense[]"); *In re Marriage of Houser*, 490 Md. 592, 610–11 (2025) (collecting cases from the United States Supreme Court recognizing a parent's fundamental liberty interest in the upbringing of their children). Thus, we recognize that a final protective order, especially when allegations of child abuse are involved, implicate fundamental liberty interests.

### 2. Factor 2: the risk of erroneous deprivation through current procedures and the probable value, if any, of additional or different safeguards

#### i. Current procedures

The General Assembly designed Maryland's protective order scheme to operate in such a way such that a respondent is notified of all pertinent information via service of a temporary protective order—not by the filing of the operative petition. In other words,

after a court issues a temporary protective order that identifies the reasonable grounds the court found to believe that abuse has occurred, it is that order that provides the notice component of procedural due process. That is reflected in the statutory scheme, which does not require service of the petition on the respondent.

Begin with the District Court's and circuit courts' authority to grant a temporary protective order:

> If, after a hearing on a petition, whether ex parte or otherwise, a judge finds that there are reasonable grounds to believe that a person eligible for relief has been abused, the judge may enter a temporary protective order to protect any person eligible for relief from abuse.

FL § 4-505(a)(1)(i). Absent from that statute is any requirement that a court base its decision only on allegations in, or any box checked on, the underlying petition for protection.

After a temporary protective order is granted, the General Assembly has required that law enforcement serve on a respondent *only* "the temporary protective order[.]" FL § 4-505(b)(1)(i). That subsection—or any other subsection for that matter—does not require that a respondent be served with the petition that initiated the temporary protective order proceeding. Although there is no statutory requirement that a temporary protective order notify a respondent of the reasonable grounds upon which the court relied in issuing a temporary protective order, page 2 of the Judiciary's standard temporary protective order form (CC-DC-DV-002JO) provides space for a judge to enter such information. If such information is provided, then service of the temporary

21

protective order will satisfy a respondent's right to be notified of the allegations against them.

The situation is quite different, however, where an interim protective order is obtained. *See supra* n.7. When a District Court commissioner issues an interim protective order, the General Assembly requires the commissioner to, among other things, "immediately forward a *copy of the petition and interim protective order* to the appropriate law enforcement agency for service on the respondent[.]" *Id.* § 4-504.1(f)(1) (emphasis added). The process of serving a respondent, thus, plainly differs depending on whether the first protective order to issue is an interim or temporary one. The General Assembly, therefore, has decided that a respondent need be served only with that which provides the ultimate factual basis for the underlying order of protection. In the interim context, that is the petition and the interim protective order; in the temporary context, that is only the temporary protective order, which identifies for the respondent the specific acts that the court has reasonable grounds to believe—after a hearing has taken place— constituted abuse and occurred. *Contrast id.* § 4-504.1(f)(1) (detailing service requirements after an interim protective order is issued), *with id.* § 4-505(b)(1)(i) (detailing service requirements after a temporary protective order is issued).

We believe that service of a temporary protective order that identifies the reasonable grounds the court finds to believe that abuse has occurred presents a low risk of an erroneous deprivation of any interest implicated by a final protective order. As just noted, Maryland's statutory scheme regarding protective orders considers whether a protective order starts on an interim or temporary basis and requires service accordingly.

22

Regardless of the starting point, a respondent always is notified of the date and time for the final protective order hearing and the possible relief that could be awarded against a respondent. Furthermore, a respondent always is entitled to be heard at a final protective order hearing and, in some cases, at a temporary protective order hearing. Thus, we see little risk for possible deprivation of procedural due process by not mandating that a respondent be served with the petition in addition to the temporary protective order. *See id.* §§ 4-505(b)(1)(i), 4-506(b).

### ii. Additional or different safeguards

In terms of additional notice requirements, Mr. Clarke explained at oral argument that he believes that a respondent should be served with a petition if a court issues a temporary protective order. He has not identified any other procedures that he believes are required to satisfy a respondent's right to procedural due process.

### 3. Factor 3: the State's interests

The State has an interest in protecting its citizens from domestic abuse and providing an efficient and effective process to adjudicate petitions for protective orders. We have previously noted that "[t]he purpose of the domestic abuse statute is to protect and 'aid victims of domestic abuse by providing an immediate and effective' remedy." *Coburn v. Coburn*, 342 Md. 244, 252 (1996) (quoting *Barbee v. Barbee*, 311 Md. 620, 623 (1988)). It is through the protective order process that "victims of domestic abuse are offered access to the judicial system to seek emergency relief and protection from their abusers." *Id.*; *see* FL § 4-504(a)(2) (authorizing the filing of a petition either if the alleged abuse occurred in the State or if the person eligible for relief is a resident of the State,

23

regardless of where the abuse occurred); *In re Marriage of Malwitz*, 99 P.3d 56, 63 (Col. 2004) ("[A]ll states share a common interest in protecting victims of domestic abuse and providing an effective means of redress for such victims.").

#### 4. Balancing the procedural due process factors

At oral argument, Mr. Clarke's counsel conceded that neither the statute nor the Maryland Rules require the service of the petition for protection. And our review of the factors noted above illustrates that the statutory procedures comport with the constitutional requirements of procedural due process for notice.

As discussed above, a temporary protective order informs a respondent of the time and date of the final protective order hearing. FL § 4-506(b)(1)(i). The temporary protective order also informs the respondent of the possible forms of relief that could be entered against them, the possible duration of a final protective order, and that failure to appear at the final protective order hearing permits service on the respondent by first-class mail at the respondent's last known address. *Id.* § 4-506(b)(2)(i)–(iii). Where the temporary protective order also identifies the reasonable grounds the court finds to believe that abuse has occurred, a court's issuance of a temporary protective order will satisfy a respondent's right to procedural due process.[19]

---

[19] Even where the temporary protective order identifies the grounds that the court finds to believe abuse has occurred, we are mindful that there is no statutory mandate that a final protective order be based only on the grounds noted in the petition or those that justified the granting of the temporary protective order. This Court has already recognized and discussed this point. *See Coburn*, 342 Md. at 257–58 (noting that evidence of past abuse, not indicated on a petition for protection is admissible at a final hearing because "[t]he purpose of the final protective order hearing is to determine whether a final protective order should be issued, *not solely to prove that a single act of*

Thus, procedural due process did not require serving Mr. Clarke with the underlying petition at the time he was served with the temporary protective order. Mr. Clarke does not identify any aspect of the petition that would have notified him about anything relevant that the temporary protective order already did not.

Even recognizing the particularly significant interests at stake for a respondent in these matters (the right to bear arms and direct the upbringing of one's children) and that Mr. Clarke's proposed additional process does not *per se* cut against the State's interest in protecting domestic abuse victims, the notice provided to Mr. Clarke in the temporary protective order satisfied procedural due process requirements.

In this case, Mr. Clarke does not allege, nor could he, that the temporary protective order did not comport with any constitutional requirement of due process. The temporary protective order stated that "[t]here are reasonable grounds to believe that the respondent committed the following act(s) of abuse:" and then specified the dates on which the court found reasonable grounds to believe the specific acts of abuse against A.C. and O.C.

_____

*abuse occurred.* In determining whether to issue a protective order, the judge should consider not only evidence of the most recent incident of abuse, but prior incidents which may tend to show a pattern of abuse[]" (emphasis added)).

We recognize that a respondent could be placed on notice of certain allegations—for the first time—while a petitioner is putting on their case-in-chief. In that instance, a respondent could seek relief, such as a suspension of the hearing or a postponement, so that the respondent can adequately prepare a defense. *See* FL § 4-506(b)(1)(ii) (noting that a final protective hearing can be held beyond seven days after the temporary order is served if good cause is shown). It will then be up to the court to determine whether the respondent's procedural due process concerns in that particular case constitute good cause to postpone the final hearing or afford other relief. We also noted in *Coburn* that due process concerns may require a court to take recesses "to allow time for a respondent to call witnesses or acquire evidence to rebut or defend against [certain] allegations." *Id.* at 260–61.

occurred. On the next page, under the heading, "**NOTICE TO RESPONDENT**[,]" the temporary protective order further stated: "**A petition for protection alleges that you have committed abuse. Based on the petition *and on any testimony provided at the initial hearing*, the court has issued this Temporary Protective Order.**" (Emphasis added). Mr. Clarke, therefore, was on notice that the court's decision was based on the petition and any information provided at the hearing, as well as the specific acts the court found reasonable grounds to believe had occurred. Mr. Clarke was apprised of all statutorily required information he would need to know to attend the final hearing and to adequately prepare for the allegations against him, as found in the temporary hearing. Thus, we hold that no procedural due process violation occurred in this case.[20]

## C.  *The Appellate Court Erred in Affirming the Circuit Court's Decision to Grant Ms. Gibson a Final Protective Order Based Solely on Finding not Credible Mr. Clarke's Testimony*

In affirming the circuit court's decision to award Ms. Gibson a final protective order, the Appellate Court erred in affirming the circuit court's decision to grant the final protective order solely on the basis that the circuit court did not find credible Mr.

---

[20] Because we are satisfied that an appropriate temporary protective order—and not the underlying petition—protects an individual's right to procedural due process and that no such violation occurred here, we need not address Mr. Clarke's arguments regarding what this statutory scheme potentially requires a petitioner to include in a petition and the potential consequences of failure to meet those potential requirements. Whatever FL § 4-504(b)(1)(i) or Maryland's pleading standard requires of a *petitioner*, it has no bearing on whether the statutory scheme satisfies a *respondent's* right to procedural due process. Because we have determined that Mr. Clarke's right to procedural due process was honored via service of the temporary protective order, we will not engage in unnecessary statutory interpretation.

26

Clarke's testimony. Thus, we vacate that portion of the Appellate Court's opinion and remand the matter for further action consistent with this opinion.

Absent a respondent's consent to the entry of a protective order, a court may issue a final protective order only if the court "finds by a preponderance of the evidence that the alleged abuse has occurred[.]" FL § 4-506(c)(1)(ii). Appellate courts generally "defer to the trial court's judgment in weighing the evidence and judging the credibility of witnesses[.]" *Bausch & Lomb Inc. v. Utica Mut. Ins. Co.*, 355 Md. 566, 588 (1999). But a factfinder's "prerogative not to believe certain testimony, however, does not constitute affirmative evidence of the contrary." *VF Corp. v. Wrexham Aviation Corp.*, 350 Md. 693, 711 (1998); *see also Att'y Grievance Comm'n of Md. v. Sheinbein*, 372 Md. 224, 275 (2002) (Eldridge, J., dissenting) ("It is a well-settled principle in the law that lack of credibility, without more, is not *ipso facto* affirmative evidence sufficient to meet a proponent's burden of proof on an intent element in a charge.").

Yet, that is the basis on which the Appellate Court affirmed the circuit court's decision to grant Ms. Gibson a final protective order. In affirming the circuit court, the Appellate Court stated:

> The court based its finding of physical abuse of O.C. on Mr. Clarke's own testimony which was contradicted by Ms. Williams' testimony. The court explicitly stated that its finding was predicated on the fact that it did not find Mr. Clarke to be credible. . . . Notably, the trial court did not find Mr. Clarke's explanation of events to be credible, and discounted his testimony that he never punched, threatened violence against, or mentally abused A.C. or O.C. As a result, based on the trial court's credibility determinations, there is sufficient evidence in the record to support the trial court's finding, by a preponderance of the evidence, that Mr. Clarke had committed physical abuse against A.C. or O.C.

27

*Clarke*, 2024 WL 4490368, at *8. We agree with the Appellate Court's observation that appellate courts "defer to the trial court's credibility determinations because the [circuit] court has had the opportunity to observe and assess witness behavior during proceedings." *Id.* But the Appellate Court affirmed the circuit court's determination that Ms. Gibson established, by a preponderance of the evidence, that Mr. Clarke abused A.C. and O.C. *solely* based on the circuit court's decision not to find credible Mr. Clarke's testimony. Negative credibility determinations—alone—are never enough to sustain a party's burden of proof. *See VF Corp.*, 350 Md. at 711. Stated another way, a denial of a fact cannot constitute affirmative evidence of that fact.

Because the Appellate Court cabined its assessment of the evidence before the circuit court to the circuit court's disbelief of Mr. Clarke's denials, we vacate the Appellate Court's opinion with respect to that issue and remand the matter back to that court with instructions to evaluate the entire record before the circuit court to determine whether it supports the circuit court's judgment. On remand, the Appellate Court should revisit the issue of the sufficiency of the evidence, including the admissibility of the testimony of witnesses, in light of new arguments raised by the amicus party.

## V
## CONCLUSION

Mr. Clarke did not preserve for appellate review the issue of whether the circuit court erred when it scheduled the hearing for a final protective order more than seven days after service of the temporary protective order, and we decline to exercise our discretion to address it. The circuit court did not violate Mr. Clarke's right to procedural

due process when it issued Ms. Gibson a temporary protective order even though (1) Ms. Gibson did not indicate on her petition that Mr. Clarke physically abused O.C. and (2) Mr. Clarke was not served with the petition. Mr. Clarke does not allege that (1) he was not served with the temporary protective order or (2) the temporary protective order failed to include any required information. Thus, he has not suffered a violation of his right to procedural due process. Finally, because the Appellate Court, in undertaking its review of the sufficiency of the evidence, affirmed the circuit court's decision to grant the final protective order solely on the basis that the circuit court determined that Mr. Clarke's testimony was not credible, we vacate that portion of the Appellate Court's opinion and remand the matter to that court for action consistent with this opinion.

**JUDGMENT OF THE APPELLATE COURT OF MARYLAND AFFIRMED IN PART AND VACATED IN PART. CASE REMANDED TO THAT COURT FOR FURTHER ACTION CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.**